UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SUZETTE SECONDI,<br><br>  Plaintiff,<br><br>  v.<br><br>CONVERGENT OUTSOURCING, INC. AND EGS FINANCIAL CARE, INC.,<br><br>  Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **TCPA, 47 U.S.C. § 227,**<br>2. **FDCPA 15 U.S.C. § 1692** *et. seq.*<br>3. **Invasion of Privacy - Intrusion Upon Seclusion** |

## COMPLAINT FOR DAMAGES

Plaintiff, Suzette Secondi ("Plaintiff"), through her attorneys, alleges the following against Convergent Outsourcing, Inc. ("Convergent") and EGS Financial Care, Inc. ("EGS") (collectively "Defendants"):

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Plaintiff's Complaint is based upon the Fair Debt Collection

- 1 -

Practices Act ("FDCPA") 15 U.S.C. § 1692. The FDCPA is a federal statute that broadly prohibits persons from engaging in abusive and/or deceptive debt collection practices

3. Count III of Plaintiff's Complaint is based upon the Invasion of Privacy - Intrusion upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts. § 652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or her private affairs or concerns… that would be highly offensive to a reasonable person."

## JURISDICTION AND VENUE

4. Subject matter jurisdiction of the Court arises under 47 U.S.C. § 227 et seq. and 28 U.S.C. 1331.

5. Venue is proper pursuant to 28 U.S.C. 1391(b)(1) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

6. Defendants transact business here; personal jurisdiction is established.

## PARTIES

7. Plaintiff is a natural person residing in the County of Kalamazoo, State of Michigan.

8. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

9. Defendants are a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. Defendant Convergent is a debt collector with its principal place of business

located in Renton, Washington. Defendant can be served with process at its Registered agent, The Corporation Company, 40600 Ann Arbor Rd E STE 201, Plymouth, MI 48170.

11. Defendant EGS is a debt collector with its principal place of business located in Irvine, California. EGS can be served through EGS's registered agent, Registered Agent Solutions, Inc., located at 2285 South Michigan Road, Eaton Rapids, MI 48827.

12. Upon information and belief, Defendants are call center collectors who acts independently from Credit One Bank using their own agents and equipment to contact Plaintiff. Defendant are a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

13. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PROCEDURAL HISTORY

14. On or about January 28, 2020, Plaintiff filed a complaint in the United States District Court in the District of Nevada against non-party Credit One alleging violations of the TCPA and an Invasion of Privacy – Intrusion Upon Seclusion claim.

15. Plaintiff filed suit against Credit One with the intention of conducting limited discovery to identify the actual parties responsible for placing the collection calls to

her cellular telephone.

16. On or about March 6, 2020, Credit One moved to dismiss Plaintiff's claim and compel arbitration.

17. On or about December 15, 2020, Plaintiff voluntarily dismissed the complaint, without prejudice, filed in the District of Nevada.

18. Plaintiff and non-party Credit One agreed that Plaintiff would not bring her claim in arbitration until after the ruling from the Supreme Court in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163.

19. On or about April 1, 2021, the Supreme Court rendered its decision in *Facebook, Inc. v. Duguid.*

20. On or about May 28, 2021, Plaintiff initiated arbitration proceedings against non-party Credit One. Plaintiff's arbitration demand explicitly denied that the claims against the non-party Does were arbitrable and the purpose of filing the arbitration demand was to learn the identities of the parties responsible for placing the calls to Plaintiff.

21. During the entire district court and arbitration proceedings, Plaintiff's counsel informally sought the names of the entities responsible for placing the calls to Plaintiff's cell phone, but Credit One refused to identify the entities absent a court or arbitrator compelling them to do so.

22. While arbitration proceeding was pending, Plaintiff's counsel and non-party

Credit One agreed to resolve their dispute in exchange for Credit One's release of the relevant account records and the identities of the entities responsible for placing calls to Plaintiff.

23. On or about December 22, 2021, Credit One provided the account records and identities of the entities responsible for placing the calls, which identified Defendants as one of the parties responsible for making calls to Plaintiff during the relevant time period.

## FACTUAL ALLEGATIONS

24. Defendant was attempting to collect an alleged debt owed by Plaintiff on behalf of Credit One. The alleged debt arose out of credit card transactions by which Plaintiff purchased property and services for personal, family, or household purposes.

25. Upon information and belief, Defendants have a contractual agreement with non-party Credit One authorizing them to collect consumer debts for Credit One, including Plaintiff's alleged debt.

26. In or around June of 2019, non-party vendor First Contact LLC ("First Contact") and Defendant EGS began placing calls to Plaintiff's cellular phone, ending in 7679, in an attempt to collect an alleged debt.

27. Between July 2019 and September 2019, non-party vendors GC Services, LP ("GC Services") and Defendant Convergent also began placing calls to Plaintiff's

cellular telephone ending in 7679.

28.     The calls placed by non-Defendants originated from the following number(s): (616) 333-6750, (616) 333-6649, (616) 333-6751, (616) 888-7360, (616) 888-7391, (616) 888-7421, (616) 333-6851, (616) 333-6861, (206) 536-1999, (616) 333-8408, (616) 333-8358, (616) 333-6809, (616) 333-6607, (616) 888-7393, (616) 888-7423, (616) 888-7363, (616) 888-7394, (616) 333-6837, (616) 333-6287, (616) 333-6227, (616) 333-6709, (616) 888-7362, (616) 888-7424, (616) 333-6634, (616) 333-6736, (616) 333-6635, and (616) 888-7071.

29.     Upon information and belief, each time Defendants would call Plaintiff they falsely represented themselves as Credit One.

30.     On or about September 26, 2019, at 10:52 a.m., Plaintiff answered a collection call from (616) 333-6750; Plaintiff heard a pause before the collection began to speak, indicating the use of an automated telephone dialing system.

31.     Defendants informed Plaintiff that it was attempting to collect a debt relating to her Credit One account.

32.     Plaintiff explained that she could not make a payment because she had been out of work for five (5) months and unequivocally revoked consent to be called any further.

33.     Despite Plaintiff's request not to be contacted on her cellular phone any further, Defendants continued to call Plaintiff.

34. Between June 4, 2019, and December 27, 2019, non-party vendors and Defendants called Plaintiff no less than **EIGHT HUNDRED AND EIGHTY-TWO (882) times**. Of the 882 calls, **FOUR HUNDRED AND THIRTY-SEVEN (437)** calls were placed after Plaintiff unequivocally revoked consent to be contacted. Defendant Convergent placed no less than **TWO HUNDRED AND FORTY-EIGHT (248)** of the post-revocation calls and Defendant EGS placed no less than **ONE HUNDRED AND EIGHTY-NINE (189)** of the post-revocation calls.

35. Upon information and belief, Defendants consistently called Plaintiff between six (6) and eight (8) times a day.

36. Upon information and belief, when Defendants place their collection calls (such as the calls placed to Plaintiff), they have access to the account records, including account notes, call history, previous contacts, and other relevant account information to assist with their collection efforts.

37. When Plaintiff answered calls from Defendant, she heard a short pause before one of Defendants' agents began to speak, indicating the use of an automated telephone dialing system.

38. Defendants often called Plaintiff multiple times in the same day, indicating the use of a random or sequential number generator to: a) determine the order in which to select phone numbers to be dialed from a preproduced list; and b) store and dial those numbers at a later time when Plaintiff did not answer.

39. Upon information and belief, Defendants called Plaintiff's cellular telephone using an artificial prerecorded voice.

40. Upon information and belief, Defendants left automated voicemail messages on Plaintiff's cellular telephone.

41. Defendants' calls were excessive and done with the purpose of attempting to harass Plaintiff into making a payment on the Account. Furthermore, Defendants' tactic of switching amongst a myriad of phone numbers was done in order to trick Plaintiff into answering the calls.

42. Defendants were aware that Plaintiff was dealing with financial issues, but willfully ignored her situation and her request for Defendants to stop its campaign of harassing phone calls.

43. Upon information and belief, non-party Credit One did not place any outbound collection calls to Plaintiff.

44. Upon information and belief, all collection calls made to Plaintiff were made by Defendants and the non-party vendors.

45. Upon information and belief, Defendants placed the collection calls on behalf of Credit One, posing to be Credit One and hiding their true identity.

46. Defendants misrepresented and deceived Plaintiff as to their identity.

47. Defendants placed telephone calls to Plaintiff without a meaningful disclosure as to their identity.

48. Upon information and belief, Defendants intentionally and knowingly refrain from disclosing its true identity so as to try and avoid the requirements of the FDCPA.

49. Upon information and belief, Defendants are separate and distinct entities from Credit One.

50. Upon information and belief, Defendants are in the business of collecting debts owed or due or asserted to be owed or due to another.

51. Defendants' conduct was done willfully and knowingly.

52. Upon information and belief, Defendants were calling third parties, including friends and family, in an effort to coerce Plaintiff to make a payment on the Account.

53. Defendants' barrage of calls to Plaintiff's cellphone caused constant disruption and distraction to her daily life, as well as embarrassment and humiliation because her phone would ring constantly while she was with family and friends.

54. Defendants' calls were so distressing that Plaintiff would experience intense emotional distress while at her job.

55. As a result of Defendants' conduct, Plaintiff experienced an immense amount of stress and anxiety in addition to painful migraine headaches that disrupted her sleep and forced her to self-medicate with over-the-counter medication. Plaintiff would not have purchased this medication but for Defendants' fraudulent and harassing phone calls.

56. Furthermore, Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, emotional and mental pain and anguish.

## COUNT I
## Defendants' Violations of the TCPA, 47 U.S.C. § 227

57. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. Defendants violated the TCPA. Defendants' violations include, but are not limited to the following:

a) Within four years prior to the filing of this action, on multiple occasions, Defendants violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

b) Within four years prior to the filing of this action, on multiple occasions, Defendants willfully and/or knowingly contacted Plaintiff at Plaintiff's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendants knowing and/or willfully violated the TCPA.

59. As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and

every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendants knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II
### Defendants' Violations of the FDCPA, 15 U.S.C. § 1692 *et. seq*

60.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61.     The FDCPA prohibits the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14).

62.     The FDCPA also requires that in its initial communication with a consumer, a debt collector disclose that the "debt collector is attempting to collect a debt and that any information obtained will be used for that purpose …." 15 U.S.C.A. § 1692e(11). *See* Costa v. Nat'l Action Fin. Servs., 634 F. Supp. 2d 1069, 1075 (E.D. Cal. 2007) (citing Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005) finding "'meaningful disclosure' presumably requires that the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call or the reason the questions are being asked.")

63.     Defendants violated 15 U.S.C. § 1692e(14) and 15 U.S.C. § 1692e(11) each

time they contacted Plaintiff because they failed to truthfully and correctly identify themselves. The Defendants did not inform Plaintiff that they were collecting the alleged debt *on behalf* of Credit One Bank, they identified themselves *as* Credit One Bank.

64. Additionally, the FDCPA prohibits a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C.A. § 1692d.

65. The Defendants incessantly called Plaintiff despite the clear revocation of her consent. The frequency of Defendants' phone calls is violative of the FDCPA on its own.

66. Defendants' actions, as described above, were done willfully and intentionally.

67. As a result of the foregoing violations of the FDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, and attorney's fees and costs.

## COUNT V
**Defendants' Invasion of Privacy
(Intrusion upon Seclusion)**

68. Plaintiff incorporates herein by reference all of the above paragraphs of this complaint as though fully set forth herein at length.

69. Defendants violated Plaintiff's privacy. Defendants' violations include, but

are not limited to, the following:

    a. Defendants intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite numerous requests for the calls to cease.

    b. Defendants' conduct would be highly offensive to a reasonable person as Plaintiff received calls that interrupted Plaintiff's work and sleep schedule.

    c. Defendants' acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

70. As a result of Defendants' violations of Plaintiff's privacy, Defendants are liable to Plaintiff for actual damages. If the Court finds that the conduct is found to be egregious, Plaintiff may recover punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Suzette Secondi, respectfully requests judgment be entered against Defendants for the following:

    A. Declaratory judgment that Defendants violated the TCPA;

    B. Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

    C. Statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(B);

D. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. 1692k(3);

E. Actual and punitive damages resulting from the invasion of privacy;

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

RESPECTFULLY SUBMITTED,

CHAMI LAW PLLC

Date: January 13, 2022

*/s/ Tarek N. Chami*
Tarek N. Chami – P76407
22000 Michigan Ave., Suite 200
Dearborn, MI 48124
(P): (313) 444-5029
(F): (888) 428-7911
(E): tarek@chamilawpllc.com
*Attorneys for Plaintiff*
*Suzette Secondi*